AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Iowa

| | |
|---|---|
| United States of America<br>v.<br><br>ALPHONSO EDMOND JR.<br><br>_Defendant(s)_ | ) ) ) ) ) ) ) )  Case No.<br>3:19-mj-152 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 1, 2019-November 12, 2019__ in the county of __Des Moines__ in the __Southern__ District of __Iowa__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) | Conspiracy to Distribute a Controlled Substance, to wit: Methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A) |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_Complainant's signature_

Adam Plein, Special Deputy, FBI
_Printed name and title_

☑ Sworn to before me and signed in my presence.

☐ Sworn to before me by telephone or other reliable electronic means.

Date: 11/12/2019

_Judge's signature_

City and state: Davenport, Iowa

Stephen B. Jackson, Jr., U.S. Magistrate Judge
_Printed name and title_

FILED
By: Clerk's Office, Southern District of Iowa
11:54 am, Nov 12 2019

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

UNITED STATES OF AMERICA          )
                                  ) ss
SOUTHERN DISTRICT OF IOWA         )

I, Adam Plein, being duly sworn state and depose as follows:

### INTRODUCTION

1. I am a Special Deputy with the Federal Bureau of Investigation (FBI), and have been since September 17, 2019. In addition to my position with the FBI, I have been employed with the Des Moines County, Iowa, Sheriff's Office for approximately 11 years, and have been a Detective with the Southeast Iowa Narcotics Taskforce for approximately 2.5 years. Along with my original academy training, I have also attended other law enforcement courses of instruction that focused on the investigation of persons involved in the manufacture, transportation, distribution, and sale of controlled substances. During the course of my law enforcement career, I have participated in the investigations of drug-trafficking organizations and have participated in hundreds of drug investigations. During the course of my career I have been involved in cases that have resulted in the seizure of cocaine, marijuana, heroin, and methamphetamine. I am familiar with and have used normal methods of investigation, including, but not limited to: visual surveillance, questioning of witnesses, execution of search and arrest warrants, utilizing informants, utilizing confidential sources, and utilizing vehicle tracking devices to further investigations into drug trafficking. Moreover, I am a federal law enforcement officer engaged in enforcing the criminal laws, including Title 21, United States Code, Sections 846 and

841(a)(1), and I am authorized by the Attorney General to execute a federal search warrant.

2. I make this affidavit in support of a criminal complaint charging **ALPHONSO EDMOND JR. (EDMOND)** with conspiracy to distribute a controlled substance, to wit: methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), in the Southern District of Iowa. This affidavit is for the limited purpose of securing the requested criminal complaint. I have set forth only the facts I believe are necessary to establish probable cause, and have not included each and every fact known to me. The information contained in this affidavit, and the grounds for my beliefs, come from my personal knowledge, information provided to me by other members of the investigative team, information contained in reports of other officers, statements made to me by witnesses, and statements of witnesses contained in police reports.

## PROBABLE CAUSE

3. In April 2019, I conducted a debrief interview of a confidential informant (CI 1). CI 1 informed me that he/she could purchase crystal methamphetamine (a.k.a. ice methamphetamine) and crack cocaine (a.k.a. cocaine base) from a black male he/she knew as "KP" and another black male he/she knew as "Money." CI 1 identified a known photograph of PAGE as the individual he/she knew as KP. CI 1 identified a known photograph of Alphonso EDMOND Jr. (EDMOND) as the individual he/she knew as Money.

4. CI 1 stated he/she had obtained large quantities of methamphetamine and cocaine base from PAGE on previous occasions. CI 1 also stated he/she had obtained large quantities of cocaine base from EDMOND.

5. CI 1 indicated he/she owed a drug debt to PAGE and EDMOND of $900, for cocaine base and methamphetamine previously obtained from EDMOND and PAGE.

6. On May 2, 2019, CI 1 contacted agents and indicated he/she had been contacted by PAGE and told to pay the $900 drug debt owed to PAGE and EDMOND directly to EDMOND. On that same date, agents utilized CI 1 to conduct a controlled payoff to EDMOND. Agents provided CI 1 with $900 of pre-serialized buy-fund money, and an audio/video recording device transmitter. CI 1 then went to a location in Burlington, Iowa, to meet EDMOND.

7. While traveling to the meet location, PAGE contacted CI 1 to inform him/her that he/she was short, as PAGE and EDMOND remembered he/she owed another $350, in addition to the $900 he/she had previously owed. PAGE advised CI 1 to pay EDMOND the money he/she had at that time. CI 1's side of the conversation was recorded on the video/audio recording device that he/she was equipped with for the controlled transaction. I have reviewed the recording from this conversation, and confirmed the nature of the conversation.

8. CI 1 met with EDMOND in the area of the Maple Hills Apartments, in Burlington, Iowa. Agents positively identified EDMOND and observed him enter into CI 1's vehicle. CI 1 informed EDMOND he/she was short some of the money owed,

but had $900 at that time. CI 1 then provided EDMOND with the $900 of pre-serialized buy-fund money. EDMOND took the $900, and exited the vehicle. This interaction was recorded. I am familiar with EDMOND from previous in person interactions. I reviewed the recording, and was able to see and hear EDMOND on the video.

9. On June 10, 2019, CI 1 informed agents that PAGE had texted him/her and told him/her to contact him. Agents were unable to meet with CI 1 at that time, but told CI 1 to record the phone call with PAGE, and attempt to arrange a controlled buy from PAGE. CI 1 was able to record the conversation with PAGE. I have subsequently reviewed that recording, and made a copy of that recording. During the conversation, CI 1 advise PAGE he/she had money available to obtain drugs from PAGE. PAGE wanted to know exactly how much money CI 1 had. CI 1 advised PAGE he/she had $2,500. PAGE then stated he was not currently in the Burlington area, but that he could send his cousin "Punkin" with the drugs. I have reviewed the recording of this conversation. I am familiar with PAGE. During my review of the recording, I recognized PAGE's voice, and confirmed the content of the conversation. Agents determined that the controlled buy would have to occur the following day. Agents had CI 1 send a text message to PAGE setting up the transaction for the following day.

10. On June 11, 2019, agents utilized CI 1 to conduct a controlled purchase of methamphetamine from PAGE. The purchase was supposed to be for one pound of methamphetamine for $5,000 from PAGE, delivered through a member of the

PAGE CE. Agents provided CI 1 $2,000 of pre-serialized buy-fund money to pay towards the pound of methamphetamine, with the remainder to be paid at a later date. Agents also provided CI 1 with an audio/video recording device transmitter. CI 1 went to a location in Burlington, Iowa, where he/she had told PAGE to send "his guy," and waited for a member of the PAGE drug organization (PAGE CE) to bring the methamphetamine to him/her. CI 1 spoke to PAGE by telephone, at which time PAGE told CI 1 to go to the Maple Hills apartments in Burlington, Iowa. PAGE told CI 1 that EDMOND would provide him/her with the one-pound of methamphetamine.

11. CI 1 went to Maple Hills Apartment #19 and met with EDMOND. CI 1 provided EDMOND with the $2,000 of pre-serialized buy-fund money, and EDMOND provided CI 1 with approximately one-half pound of methamphetamine. CI provided the audio/video recording device transmitter and the methamphetamine EDMOND provided him/her to agents. The weight of the methamphetamine obtained from EDMOND was approximately 223.85 grams. The substance field-test positive for methamphetamine. I have reviewed the recording from this transaction. I was able to see and hear EDMOND on the recording.

12. Later that same date, CI 1 placed a recorded phone call to PAGE to inform him that EDMOND had only provided him/her with one-half pound of methamphetamine, and not the full pound, as previously discussed. PAGE informed CI 1 he would contact EDMOND about this. I was present when this phone call was made and recognized PAGE's voice at that time. I have also reviewed the recording of this conversation and confirmed PAGE's voice and the content of the conversation.

13. CI 1 has testified under oath that he/she has seen EDMOND in possession of a firearm related to his drug trafficking activities.

14. I believe the information from CI 1 incorporated herein is reliable and trustworthy. Some of the information provided by CI 1 has been independently corroborated by law enforcement. Additionally, some of the information provided by CI 1 is consistent with information received from other sources.

15. I am aware that another confidential informant (CI 2) has testified under oath about his/her knowledge of EDMOND's involvement in drug trafficking. CI 2 stated that he/she has previously observed EDMOND with multiple "bricks" (kilograms) of cocaine and several pounds of methamphetamine. CI 2 stated that he/she is aware that EDMOND is involved in the PAGE CE. CI 2 stated that EDMOND lives in Burlington, Iowa, on South 14th Street, and that the PAGE CE utilizes that residence as a stash house for their drugs. CI 2 further stated that he/she has previously observed EDMOND in possession of a firearm, in connection with his drug trafficking activities. CI 2 provided additional information about the PAGE CE.

16. I believe the information from CI 2 incorporated herein is reliable and trustworthy. Some of the information provided by CI 2 has been independently corroborated by law enforcement. Additionally, some of the information provided by CI 2 is consistent with information received from other sources.

17. Based upon information obtained as a part of this investigation, I believe the conspiracy to be on-going.

## CONCLUSION

18. Based on the foregoing, I believe there is probable cause to charge **ALPHONSO EDMOND JR.** with conspiracy to distribute a controlled substance, to wit: methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), in the Southern District of Iowa.

_____
Adam Plein
Special Deputy, FBI

Sworn to before me and subscribed in my presence this 12th day of November, 2019.

_____
Stephen B. Jackson Jr.
United States Magistrate Judge
Southern District of Iowa